UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

ROBERT S.,[1]

        Plaintiff,

   v.                                                          1:20-CV-1738-LJV
                                                                          DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

———————————————————


      On November 30, 2020, the plaintiff, Robert S. ("Robert"), brought this action

under the Social Security Act ("the Act").  He seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that he was not disabled.  Docket

Item 1.  On September 24, 2021, Robert moved for judgment on the pleadings, Docket

Item 13; on November 30, 2021, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 17; and on December 20, 2021, Robert replied,

Docket Item 18.

      For the reasons stated below, this Court grants Robert's motion in part and

denies the Commissioner's cross-motion.[2]

———————————————

    [1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18,
2020).

    [2] This Court assumes familiarity with the underlying facts, the procedural history,
and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts
necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## DISCUSSION

Robert argues that the ALJ failed to properly evaluate the medical opinions of Peter Kowalski, M.D., and Nikita Dave, M.D., in formulating his residual functional

capacity ("RFC").[3]  Docket Item 13-1 at 14.  More specifically, he contends that the ALJ failed to incorporate the limitations in those opinions regarding "frequent restroom breaks," *id.* at 16, and "standing and/or walking as required by light work," *id.* at 18. This Court agrees that the ALJ erred and, because that error was to Robert's prejudice, remands the matter to the Commissioner.

## I.      FREQUENT RESTROOM BREAKS

For claims filed after March 27, 2017, such as Robert's, the Commissioner evaluates medical opinion evidence under the framework in 20 C.F.R. § 404.1520c. *See* Revisions to the Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).  Under the new regulations, an ALJ will consider opinions from a claimant's medical sources but "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s]."  20 C.F.R. § 404.1520c(a).  Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions" in light of the regulatory factors.  *Id.* § 404.1520c(b), (c)(1)-(5).

Although the new regulations do not require an ALJ to give controlling weight to any medical opinion—even to an opinion of a treating source—they also do not give the ALJ license to disregard medical opinion evidence without a sufficient reason supported by the record.  *See Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *9

---

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8 (Jan. 1, 1986)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

(S.D.N.Y. Jan. 29, 2021) ("Thus, just as under the previous regulations when failure to fully consider the [] factors derived from 20 C.F.R. §§ 404.15227(c) and 416.929(c) would be grounds for remanding an ALJ's decision, an ALJ's failure to adequately consider and apply the new regulatory factors also require[s] a reviewing court to remand."), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).  The Code of Federal Regulations lists five factors that the ALJ will consider when weighing medical opinions: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the source's specialization; and (5) any other factors that "that tend to support or contradict" the opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  An ALJ specifically is required to "explain how [he or she] considered the supportability and consistency factors"—because they are "the most important factors"—and "may, but [is] not required to, explain how [he or she] considered the [remaining] factors."  *Id.* § 404.1520c(b)(2); *see e.g.*, *Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, at *7 (N.D.N.Y. Mar. 30, 2021); *Rivera v. Comm'r of the Soc. Sec. Admin.*, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin.*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

Here, the Social Security consultant physician, Dr. Dave, opined in March 2018 that "[d]ue to Crohn's disease, [Robert] would have the need for frequent restroom intervals through the day which may cause interruption in routine ability to continuously perform duties."  Docket Item 8 at 359.  But the ALJ rejected Dr. Dave's "functional

4

limitations related to frequent diarrhea" because they were "not supported by subsequent evidence indicating improvement with Ste[L]ara," *id.* at 25, a medication that Robert began taking in December 2017, *id.* at 23.  The ALJ also credited what he said was Robert's "frequent denial" of digestive symptoms, *id.* at 26, to conclude that Robert did not need frequent restroom breaks.

The ALJ's conclusion that Robert's diarrhea improved with SteLara has some support in the record.  *See id.* at 398 (evaluation report completed by Richard Kaplan, M.D., observing that "SteLara seems to be working well").  But a few months after Robert began taking SteLara, he told Dr. Dave that he still was having "20 to 30 bowel movements a day," *id.* at 356, and Dr. Dave opined that Robert still would need frequent restroom breaks due to diarrhea, *id*. at 359.  About a year later, Robert reported loose stools twenty times a day, and Dr. Kowalski opined that because of that and other symptoms, Robert would be absent from work more than four days each month.  *Id.* at 383.  So Robert's diarrhea may have improved, but there is no reason to believe it improved so much that Dr. Dave's opinion that Robert needed frequent restroom breaks was incorrect.

Moreover, the record simply does not support the ALJ's reliance on Robert's "frequent denial of . . . symptoms" associated with Crohn's disease.  *See id*. at 26.  In support of that reference, the ALJ cited three medical records, only one of which actually supports what the ALJ said.  More specifically, the ALJ cited "Exhibit[] 10F," *id.,* which in fact indicates that Robert denied diarrhea at that time, *see id*. at 366 (notes from October 2018 visit with Dr. Kowalski).  But the ALJ also cited Exhibit "11F at 4" and "13F at 4," *id*. at 26, which say nothing about Robert's complaints other than that he was

"in no acute distress," *see id.* at 380 (notes from May 2019 visit with Dr. Kowalski), 392 (notes from August 2019 visit with Dr. Kowalski).  What is more, while the ALJ cited Exhibits 11F and 13F, he ignored the intervening exhibit—Exhibit 12F—which explicitly noted Robert's symptoms of "loose stools 20x/d[ay]," predicted that Robert would have "'good days' and 'bad days,'" and concluded that Robert would be absent from work more than four days a month "as a result of [his] symptoms or treatment."  *Id.* at 383 (August 2019 evaluation by Dr. Kowalski) (emphasis omitted).  So Robert did not "frequent[ly]" deny symptoms of Crohn's disease, *id.* at 26, and the ALJ not only miscited the record to try to support that conclusion, but he also cherry-picked from the record as well.  *See Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both.") (citing *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010)).

The ALJ seems to have concluded that because Robert's "lab results" were "unremarkable," and because his weight was "stable or increased," his diarrhea must have been controlled with SteLara and any "limitations . . . predicated on symptoms of Crohn's disease" must have been unwarranted.  *See* Docket Item 8 at 26 (finding that "to the extent that Dr. Kowalski's opinion [about] physical functional limitations [is] predicated on symptoms of Crohn's disease, it is not supported by [Robert's] stable or increased weight" and is inconsistent with "his unremarkable lab results").  But that is the sort of judgment that always has been reserved for a physician, and the new regulations do not change that.  *See Vellone v. Saul*, 2021 WL 319354, at *8 (S.D.N.Y. Jan. 29, 2021) (holding that treatment notes alone cannot "overcome the need for a

medical source to weigh in on Plaintiff's functional limitations"), *report and recommendation adopted sub nom. Vellone o/b/o Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).  Can someone's weight remain stable or increase despite frequent diarrhea?  Can someone with symptomatic Crohn's disease have normal bloodwork?  This Court has no idea.  And without a medical professional's assessment, neither does the ALJ.

In sum, the ALJ did not provide adequate reason to discount Dr. Dave's opinion about the need for frequent restroom breaks.[4]  At the very least, the ALJ was obligated to "take . . . additional actions," 20 C.F.R. § 404.1520b(b)—perhaps to request another opinion—to explain why the medical records belie Robert's claimed symptoms of frequent bowel movements and Dr. Dave's opinion that Robert needs frequent restroom breaks.  *See id.* § 404.1520b(b)(2); *see also Smith v. Comm'r of Soc. Sec.*, 2018 WL 1684337, at *7 (N.D.N.Y. Apr. 5, 2018) ("Several courts have held . . . [that] an ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision.  Generally, the ALJ should order a consultative examination when a conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved.") (internal citations and quotations omitted).  For that reason, and because the ALJ did not incorporate any need for restroom breaks in the RFC, remand is required.  *See Sampel v. Colvin*, 2017 WL 2703655, at *3 (W.D.N.Y. June 23, 2017) (The ALJ's error in failing to incorporate

---

[4] Dr. Kowalski did not specifically opine about Robert's need to take frequent restroom breaks.  But to the extent the ALJ rejected Dr. Kowalski's assessment of the severity of Robert's symptoms of Crohn's disease, that analysis was flawed for the same reasons.

treating physician's opined limitations into RFC was not harmless because "[t]he Court [could not] conclude on the current record that the flaws in the ALJ's RFC determination had no impact on the . . . ultimate conclusion that [the] plaintiff was not disabled.").

## II.    SIT/STAND LIMITATION

The ALJ's failure to address postural limitations about which both the Social Security consultant and Robert's treating physician agreed is a second independent reason that remand is required.  In that regard, Dr. Dave, the consultant, opined that Robert had "[m]oderate to marked limitations for prolonged sitting, prolonged standing, [and] prolonged walking . . . and [that he] may benefit from some changes in body positioning."  Docket Item 8 at 359.  Dr. Dave also noted that Robert "many times stated today that standing or walking helps to control the diarrhea, but if he is sitting, . . . he is not able to control the urge to evacuate."  *Id.* at 356.

Dr. Kowalski, Robert's treating physician, was a bit more specific but largely agreed.  *Id.* at 383-87.  He opined that Robert could stand for a total of three hours in an eight-hour workday and for 30 minutes at a time before needing to walk or lie down.  *Id.* at 384.  He opined that Robert could sit for a total of three hours in a workday and for less than 15 minutes at a time before needing to stand, walk, or lie down.  *Id.*  And he opined that Robert could walk for a total of one hour in a workday and for 15 minutes at a time before needing to stand, sit, or lie down.  *Id.* at 385.

The ALJ found Dr. Dave's opinion to be "somewhat convincing and persuasive" because it was "supported by his findings of . . . slightly decreased sensation in the left foot and leg."  *Id.* at 24.  But he discounted Dr. Dave's findings of moderate to marked limitations as "not supported by his findings of otherwise intact sensation, full strength[,]

8

and normal deep tendon reflexes in the bilateral lower extremities, in addition to normal gait." *Id.* at 25.  The ALJ found Dr. Kowalski's opinion[5] "neither convincing nor persuasive" because the "extreme limitations opined by Dr. Kowalski are not supported by his mostly normal exam findings, with the exception of diminished sensation in the bilateral feet." *Id.* at 26.  And the ALJ did not include any limitations on sitting, standing, or walking—about which Dr. Dave and Dr. Kowalski both agreed—in the RFC.[6]

In discounting the opinions of Dr. Kowalski and Dr. Dave, "the ALJ considered the medical opinions in isolation and did not account for the consistency of [Dr. Kowalski's and Dr. Dave's] opinions with each other." *See Ingrid T.G. v. Comm'r of Soc. Sec.*, 2022 WL 683034, at *9 (S.D.N.Y. Mar. 8, 2022).  In fact, the ALJ did not acknowledge the substantial similarities between the two physicians' opinions at all.  That was error.  *Id.*

"Both supportability and consistency in part require comparison of the medical opinions with other medical sources."  *Mark K. v. Comm'r of Soc. Sec.*, 2021 WL 4220621, at *4 (W.D.N.Y. Sept. 16, 2021) (citing 20 C.F.R. § 404.1520c(c)(1) and (c)(2)).  Indeed, because the new regulations no longer require the ALJ to assign

---

[5] The ALJ also considered the opinion of "State agency consultant" James Lawrence, M.D., in formulating Robert's RFC.  *Id.*  Robert does not argue that the ALJ erred in considering Dr. Lawrence's opinion.

[6] The ALJ found Robert had the physical RFC to perform "light work as defined in 20 C.F.R. 404.1567(b)" with the following exceptions: Robert "can occasionally push, pull and/or operate foot controls with the bilateral lower extremities.  He can occasionally climb ladders, ropes[,] or scaffolds, occasionally climb ramps and stairs and occasionally stoop, kneel, crouch and crawl.  He can occasionally be exposed to vibrations, unprotected heights and moving machinery parts."  *Id.* at 21.  The RFC did not include any positional limitations, such as the need to alternate among sitting, standing, and walking.  *See id.*

specific weight to medical opinion evidence or, absent detailed analysis, to give controlling weight to the opinion of treating physicians, *see* 20 C.F.R. § 404.1520c(a), it is especially important to compare the opinion of a treating physician with those of his colleagues.  *See William B. J. v. Comm'r of Soc. Sec.*, 2022 WL 344059, at *5 (N.D.N.Y. Feb. 4, 2022) (remanding where "[t]here [wa]s no comparison between [a medical source] opinion and evidence from other medical sources and nonmedical sources in the file") (internal quotations omitted).  The ALJ did not do that here, and that error requires remand.  *See Rivera*, 2020 WL 8167136, at *14 ("If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases [his] explanation upon a misreading of the record, remand is required.") (citing *Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776, at *9 (N.D.N.Y. Oct. 1, 2020)).

The ALJ's failure to acknowledge the consistency between Dr. Kowalski's and Dr. Dave's opinions is particularly troubling because those opinions both conflict with Robert's RFC.  More specifically, the ALJ found that Robert could peform light work[7] but did not include any limitation on sitting, standing, or walking or address any need to change positions.  *See* Docket Item 8 at 21.  So "because the limitations opined in [Dr. Dave's and Dr. Kowalski's opinions] were quite restrictive and could have resulted in a finding of disability—or at the very least a more[-]restrictive RFC finding—if given weight by the ALJ," the error was not harmless.  *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (W.D.N.Y. May 26, 2020) (quoting *Lewis v. Colvin*, 2017 WL 2703656, at *2 (W.D.N.Y. June 23, 2017)).

---

[7] Light work "requires a good deal of walking or standing, or [] it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. 404.1567(b).

Finally, in rejecting the opinions about Robert's postural limitations, the ALJ made the same error he made with respect to the opinion on restroom breaks: he substituted his own lay judgment for that of the physicians on a medical issue.  The ALJ explicitly rejected Dr. Dave's opinion about sitting, standing, and walking limitations because it was "not supported by his findings of otherwise intact sensation, full strength[,] and normal deep tendon reflexes in the bilateral lower extremities, in addition to normal gait."  Docket Item 8 at 25.  Likewise, he rejected Dr. Kowalski's similar opinion because the "extreme limitations opined by Dr. Kowalski are not supported by his mostly normal exam findings, with the exception of diminished sensation in the bilateral feet."  *Id.* at 26.  How the ALJ, a layperson, knows that sitting, standing, and walking limitations are incompatible with "intact sensation," or "normal deep tendon reflexes," or "normal gait," or even "mostly normal exam findings," he does not say.  And without at least some explanation, his bare conclusions do not pass muster.

On remand, the ALJ must either adequately explain why he does not credit the limitations about which Dr. Kowalski and Dr. Dave agreed and cite the opinions of other medical sources or medical evidence that might support a layperson's conclusions, or he must incorporate those limitations into the RFC.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 17, is DENIED, and Robert's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.


SO ORDERED.

Dated:          May 16, 2022
                Buffalo, New York


                                         */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

12